**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARIA AGUILAR,<br><br>    Plaintiff,<br><br>v.<br><br>BOULDER BRANDS, INC., et al.<br><br>    Defendants. | Case No.: 3:12-cv-01862-BTM-BGS<br><br>**ORDER**<br><br>**GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT, and**<br><br>**GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FURTHER AMEND THE PROPOSED SECOND AMENDED COMPLAINT** |

    Plaintiff Maria Aguilar brought this consumer class action alleging that Defendants have engaged in false and misleading advertising by marketing butter with labels stating that "100mg Plant Sterols Helps Block Cholesterol in the Butter" and that the plant sterols "help block the absorption of dietary cholesterol in the butter."

    Plaintiff has now moved for leave to file a second amended complaint. (Docs. 43, 45). Plaintiff subsequently moved for leave to further amend the proposed second amended complaint by substituting a new proposed class representative. (Doc. 62). Defendants oppose both motions. (Docs. 49, 64).

## I. Motion for Leave to File a Second Amended Complaint

Fed. R. Civ. P. 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." The Ninth Circuit has held that "Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality." DCD Programs, LTD. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987) (internal quotation marks and citations omitted).

> This liberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties. It is, however, subject to the qualification that amendment of the complaint does not cause the opposing party undue prejudice, is not sought in bad faith, and does not constitute an exercise in futility.
>
> Four factors are commonly used to determine the propriety of a motion for leave to amend. These are: bad faith, undue delay, prejudice to the opposing party, and futility of amendment. These factors, however, are not of equal weight in that delay, by itself, is insufficient to justify denial of leave to amend.

Id. (internal citations omitted). The party opposing an amendment has the burden of establishing why leave to amend should not be granted. Senza-Gel Corp. v. Seiffhart, 803 F.2d 661, 666 (Fed. Cir. 1986); Larios v. Nike Retail Services, Inc., 2013 WL 4046680, at *3 (S.D. Cal. Aug. 9, 2013); Genetech, Inc. v. Abbot Laboratories, 127 F.R.D. 529, 530-31 (N.D. Cal. 1989).

Defendants argue that the Court should deny leave to amend because the proposed amendment (1) would be futile, (2) is made in bad faith and after undue delay, and (3) would prejudice the defendants.

### 1. Futility

To prevail on a California Unfair Competition Law (UCL) claim for deceptive advertising, the plaintiff must establish that the defendant used "unfair, deceptive, untrue or misleading advertising," Cal. Bus. & Prof. Code § 17200. Similarly, to make out a claim under California's Consumer Legal Remedies Act (CLRA), the plaintiff must show that the defendant engaged in "unfair methods of competition" or "unfair or deceptive acts or practices," which includes representations "that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have." Cal. Civ. Code § 1770(a)(5).

Plaintiff's First Amended Complaint explained that the basis for her misrepresentation claim was that "Smart Balance Spreadable Butter . . . does not have sufficient levels of plant sterols to block the absorption and thus reduce cholesterol in the body." (FAC ¶ 2). Plaintiff's proposed Second Amended Complaint modifies the claim, stating that

> [E]ach and every consumer of Defendants' Smart Balance Spreadable Butter is exposed to the promise that consumption of Defendants' Smart Balance Spreadable Butter will "actually help block the absorption of the dietary cholesterol in the butter" and this benefit is the result of "100mg Plant Sterols." Taken individually and as a whole these statements, if not expressly, imply that there is there is a health benefit being provided by the 100mg of Plant Sterols contained in these butters and that there is a health benefit in eating one of these butters.
>
> . . . .
>
> [T]he 100mg of plant sterols contained in Smart Balance Spreadable Butter is not an amount sufficient to provide consumers with a clinically meaningful cholesterol

> blocking effect and, as such, there is no clinically meaningful health benefit that can be derived from the 100mg of plant sterols contained in a serving of these butters.
>
> As a result, Plaintiff and Class members were deceived into purchasing what they believed to be Products with meaningful health benefits based on Defendants' promise that the plant sterols in the Products will "actually help block the absorption of the dietary cholesterol in the butter," when, in fact, the blockage effect from the plant sterols in Defendants' Products is so insignificant that it is clinically meaningless.

(SAC ¶¶ 1-3).

Defendant argues that Plaintiff's proposed amendment would be futile because California law does not recognize Plaintiff's amended claim as actionable. First, Defendant contends that its product labels do not expressly state or imply that plant sterols in the butter will "provide consumers with a clinically meaningful cholesterol blocking effect." Defendants cannot be held liable for statements they did not make or imply. See, e.g., Videtto v. Kellogg USA, 2009 WL 1439086, at *3 (E.D. Cal. May 21, 2009) (dismissing UCL and CLRA claims because Froot Loops cereal "packaging makes no claim that the Product is particularly nutritious or designed specifically to meet the nutritional needs of toddlers or children."); Rooney v. Cumberland Packing Corp., 2012 WL 1512106, at *4 (S.D. Cal. April 16, 2012) (dismissing UCL claim because "Sugar in the Raw" box did not state that it was "unprocessed" or "unrefined," and "turbinado sugar is widely marketed in the industry as raw cane sugar.").

Plaintiff argues in response that reasonable consumers will read Defendant's statements that "100mg Plant Sterols Helps Block Cholesterol in the Butter" and that the plant sterols "help block the absorption of dietary cholesterol in the butter"

- 4 -

1 and understand them to mean that they will derive a meaningful cholesterol
2 blocking benefit from consuming the butter.

3       The Court finds that Plaintiff's reading of Defendant's labels is plausible.
4 Moreover, whether or not the label's implication is deceptive is a dispute of
5 material fact and inappropriate for resolution at this early stage in the litigation. See
6 Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008) ("California
7 courts . . . have recognized that whether a business practice is deceptive will usually
8 be a question of fact not appropriate for decision on demurrer.").

9       Second, Defendants argue that even their label can be read to imply the
10 existence of a clinically meaningful cholesterol blocking effect, that representation
11 is too vague and ambiguous to be actionable. Vitt v. Apple Computer, Inc., 469
12 Fed. Appx. 605, 607 (9th Cir. 2012) ("[T]o be actionable as an affirmative
13 misrepresentation, a statement must make a 'specific and measurable claim, capable
14 of being proved false or of being reasonably interpreted as a statement of objective
15 fact.'" (quoting Coastal Abstract Serv. v. First Am. Title Ins. Co., 173 F.3d 725,
16 731 (9th Cir. 1999))); Rooney, 2012 WL 1512106, at *3 ("'Generalized, vague, and
17 unspecified assertions constitute "mere puffery" upon which a reasonable consumer
18 could not rely, and hence are not actionable' under the UCL . . . or CLRA."
19 (quoting Anunziato v. eMachines, Inc., 402 F. Supp. 2d 1133, 1139 (C.D. Cal.
20 2005))).

21       Plaintiff argues that Defendant's implied promise of a meaningful health
22 benefit is sufficiently specific and measurable and can be proven false. To this end,
23 Plaintiff has submitted the Class Action Expert Report of Dr. Joseph M. Keenan
24 ("Keenan Report"). Dr. Keenan acknowledges that "plant sterols in certain
25 quantities do have the ability to help block absorption of cholesterol," and that
26 "consumption of a minimum of 0.8 grams of plant sterols daily, and preferably 2
27 grams (almost an entire container of Smart Balance Spreadable Butter), is required
28

to meaningfully lower LDL cholesterol levels." (Keenan Report ¶ 10). The report goes on to note that

> using the finding of the Racette Study read in the most positive light possible for the Smart Balance Spreadable Butters' cholesterol blocking representation, one can extrapolate that there is a 1.8% cholesterol absorption reduction for each additional 100mg of plant sterols that a person consumes over what is found in the average American diet. Based on this 1.8% cholesterol absorption reduction rate, the addition of the 100mg of plant sterols contained in one serving of the Smart Balance Spreadable Butter products to an average American diet would "block" approximately 0.27mg of the 15mg of cholesterol contained in a serving of the Smart Balance Butter & Canola Oil Blend and Butter & Canola and EVOO blends (or 0.018 percent of the cholesterol in a serving) and approximately 0.18mg of the 10mg of cholesterol contained in a serving of the Smart Balance Spreadable Butter "Light" product (or 0.018 percent of the cholesterol in a serving).

(Kennan Report ¶17).

Dr. Keenan concludes that

> A blockage of either 0.18mg or 0.27mg – 0.018 percent of the cholesterol in a serving – of cholesterol is such a *de minimus* amount that I do not consider it nor would other experts in the field consider it to be clinically meaningful. It would have no impact on any of the parameters used to evaluate cholesterol levels and provide no meaningful contribution to the nutritional goal of dietary cholesterol consumption recommendations.

(Kennan Report ¶ 18).

Based on the foregoing report, the Court finds that Defendants' implied representation that their products provide a clinically meaningful health benefit is specific, measurable, and falsifiable. Accordingly, the Court concludes that Plaintiff's proposed amendment would not be futile.

### 2. Bad Faith and Undue Delay

Defendant argues that Plaintiff's request to amend her complaint has been made in bad faith because the proposed amendment makes substantial changes to the complaint, introduces a new scientific study, and changes the nature of Plaintiff's UCL and CLRA claims from literal falsity to deception. Defendant contends that Plaintiff misrepresents these changes as a mere clarification of her allegations.

Defendant has the burden of establishing that Plaintiff's proposed amendment is made in bad faith. See Senza-Gel Corp., 803 F.2d at 666; Larios, 2013 WL 4046680, at *3. Defendant has not done so. First, while Plaintiff's proposed amendments are substantial, they can be fairly characterized as a clarification of the allegations. There is nothing deceptive about the scope of Plaintiff's revisions or how she describes the revisions. Second, there is nothing improper in Plaintiff's inclusion of a new scientific study in support of her claims. Third, Plaintiff's proposed amendments do modify the basis of her claims, but they do not introduce an entirely new claim. Plaintiff's First Amended Complaint advanced UCL and CLRA claims based on not only false statements, but also misrepresentation and omission of material facts likely to deceive the public, (FAC ¶¶ 44, 48, 56, 57). Even if Plaintiff has abandoned literal falsity in favor of implied misrepresentation and deception in her proposed Second Amended Complaint, such claims still fall within the ambit of the UCL and CLRA. Cal. Bus. & Prof. Code § 17200; Cal. Civ. Code § 1770(a)(5). See Lima v. Gateway, Inc., 710 F. Supp. 2d 1000, 1008 (C.D. Cal. 2010) ("To the extent [defendant] argues that [its]

- 7 -

unquantifiable statements are not alleged to be false, it misses the point. The relevant question is whether the statements, taken as a whole, are likely to deceive members of the public."). Accordingly, the Court rejects the argument that Plaintiff's proposed amendment is made in bad faith.

Defendant also contends that the amendment has been made after undue delay. Defendant reasons that the motion to amend is made fourteen months after the First Amended Complaint was filed and more than five months after the Court ruled on Defendant's motion to dismiss. In response, Plaintiff argues that the motion is timely because it was filed within the deadline imposed by the Court's scheduling order.

Plaintiff's delay in filing is less than ideal, but it does not rise to the level of "undue delay" that can bar a motion to amend under Rule 15's liberal standards. Moreover, even if Plaintiff's delay was undue, such delay standing alone would not be a sufficient basis for denial of leave to amend. DCD Programs, 833 F.2d at 186 ("delay, by itself, is insufficient to justify denial of leave to amend.").

### 3. Prejudice

Defendants argue they will be prejudiced if Plaintiff's amendments are allowed. Defendants note that discovery has already begun and they have responded to 49 interrogatories, 88 documents requests, and 38 requests of admission, and have produced nearly 4,000 pages of documents. Defendants reason that if Plaintiff is allowed to modify her theory of the case at this point, it may nullify their efforts and require additional discovery. Defendants also argue that Plaintiff's motion for class certification will soon be due and that the parties will need to brief the motion on the operative First Amended Complaint, but may be forced to re-brief the matter if Plaintiff is allowed to file a Second Amended Complaint.

"Prejudice to the opposing party is the most important factor" when determining whether leave should be granted to amend a complaint. Jackson v. Bank of Hawaii, 920 F.3d 1385, 1387 (9th Cir. 1990). The nullification of prior discovery and the need for new discovery can constitute sufficient prejudice to bar a motion to amend a complaint. Id. at 1387-88. Plaintiff has abandoned her express warranty claim in her proposed Second Amended Complaint, so it is possible that some discovery on that matter may be nullified. However, Plaintiff's UCL and CLRA claims remain largely unchanged. Under both the First Amended Complaint and the proposed Second Amended Complaint, the focus remains on Defendant's butter products and their cholesterol blocking representations. Discovery should not be substantially impacted by Plaintiff's Second Amended Complaint.

Furthermore, the Court notes that Plaintiff's motion for class certification was denied without prejudice and Plaintiff was granted leave to refile the motion once the Court ruled on the instant motions to amend. Accordingly, Defendant faces no risk of being forced to re-litigate the motion for class certification, which will not be briefed, heard, or resolved before the instant motion to amend is ruled on.

The Court concludes that Defendant has failed to establish that Plaintiff's motion for leave to amend is sought in bad faith, after undue delay, would be futile, or would prejudice Defendants. Therefore the Court GRANTS Plaintiff's motion for leave to amend the complaint. The Court next turns to Plaintiff's subsequent motion to further amend her complaint.

**II. Motion for Leave to Further Amend the Proposed Second Amended Complaint and to Substitute a New Plaintiff**

Plaintiff has proposed the substitution of Elizabeth Mitchell in place of Maria Aguilar as named plaintiff and proposed class representative. Plaintiff's counsel explains that Ms. Aguilar informed counsel on January 15, 2014, that "due to her

own health issues and some emergency health issues that had arisen with respect to her son that required her assistance, she could no longer commit to serving as a class representative." (Doc. 62-3, Decl. of Patricia N. Syverson ("Syverson Decl.")). Like Ms. Aguilar, Ms. Mitchell was purportedly exposed to Defendant's cholesterol blocking benefit representation and, believing this representation, purchased Defendant's butter. (Doc. 62-2, Proposed Second Amended Complaint ¶ 12).

Unlike Plaintiff's initial motion seeking leave to file a Second Amended Complaint, her second motion was made after the November 8, 2013, deadline imposed by the Court's scheduling order. (Doc. 38). As such, Plaintiff must satisfy Fed. R. Civ. P. 16(b)(4), which provides that a scheduling order "may be modified only for good cause and with the judge's consent." This "good cause" standard differs from the Rule 15(a) standard:

> Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)' s "good cause" standard primarily considers the diligence of the party seeking the amendment. . . . Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification."

Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992) (citation omitted). If the "good cause" standard for modifying the scheduling order is met, the Court then evaluates the proposed amendment under the previously discussed Rule 15 standard of "extreme liberality," with an eye to "bad faith, undue delay, prejudice to the opposing party, and futility of amendment." See id. at 608; DCD Programs, 833 F.3d at 186 (citations omitted).

Defendants raise several objections to the proposed substitution. First, Defendants argue that no case or controversy exists once the sole named plaintiff and proposed class representative seeks to withdraw prior to class certification, and thus the Court lacks jurisdiction and must dismiss the complaint. Second, Defendants contend that Plaintiffs have failed to establish good cause for departing from the scheduling order. Third, Defendants argue that substitution should not be allowed because the amendment would be futile and has been sought with undue delay and in bad faith. The Court will address each of these arguments in turn.

### **1. Jurisdiction**

"Article III of the Constitution limits the jurisdiction of the federal courts to 'Cases' or 'Controversies.' The doctrine of mootness, which is embedded in Article III's case or controversy requirement, requires that an actual, ongoing controversy exist at all stages of federal court proceedings." Pitts v. Terrible Herbst, Inc., 653 F.3d 1081, 1086 (9th Cir. 2011) (citing U.S. Const. art. III, § 2, cl. 1.). As the Ninth Circuit has explained:

> A case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome of the litigation. In other words, if events subsequent to the filing of the case resolve the parties' dispute, we must dismiss the case as moot, because [w]e do not have the constitutional authority to decide moot cases.

Id. at 1086-87 (internal quotation marks and citations omitted).

However, the mootness doctrine is applied "flexibly, particularly where the issues remain alive, even if 'the plaintiff's personal stake in the outcome has become moot.'" Id. at 1087 (quoting Matthew I. Hall, The Partially Prudential Doctrine of Mootness, 77 Geo. Wash. L.Rev. 562, 622 (2009)). Flexible application is particularly appropriate in the context of class actions. Id. (citing Sosna v. Iowa,

419 U.S. 393 (1975) (case not moot when class representative lost personal stake in outcome because case or controversy remained between defendants and members of certified class)).

The Supreme Court and Courts of Appeal have recognized that such flexibility may also apply to a not-yet-certified class. See, e.g., Sosna, 419 U.S. at 402 n.11 ("In such instances, whether the certification can be said to 'relate back' to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review."); Pitts, 653 F.3d at 1085, 1090-92 (pre-certification action not mooted when defendant made offer of judgment satisfying plaintiff's claims and plaintiff refused offer); Sandoz v. Cingular Wireless LLC, 553 F.3d 913, 921 (5th Cir. 2008) (noting "there must be some time for a plaintiff to move to certify a collective action before a defendant can moot the claim through an offer of judgment."); Weiss v. Regal Collection, 385 F.3d 337, 347-48 (3d Cir. 2004) (absent undue delay, allowing a motion for class certification to relate back to the filing of the complaint when an offer of judgment would otherwise moot the case).

Judge Posner, writing for the Seventh Circuit, has also discussed the tension between the seeming formalism dictated by the case or controversy requirement and the reality of putative class actions:

> Strictly speaking, if no motion to certify has been filed (perhaps if it has been filed but not acted on), the case is not yet a class action and so a dismissal of the named plaintiffs' claims should end the case. If the case is later restarted with a new plaintiff, it is a new commencement, a new suit. But the courts, both federal and Illinois, are not so strict. Unless jurisdiction never attached . . . or the attempt to substitute comes long after the claims of the named plaintiffs were dismissed, substitution for the named plaintiffs is allowed.

> The courts thus disregard the jurisdictional void that is created when the named plaintiffs' claims are dismissed and, shortly afterwards, surrogates step forward to replace the named plaintiffs. This may seem irregular; but maybe there isn't really a jurisdictional void, since the class member who steps forward to take the place of the dismissed plaintiff has a real controversy with the defendant.

Phillips v. Ford Motor Co., 435 F.3d 785, 787 (7th Cir. 2006) (internal citations omitted).

Viewed through a formalistic lens, this case was mooted the moment Ms. Aguilar resolved to withdraw as the sole named plaintiff and proposed class representative. Defendants contend it does not matter that Ms. Mitchell is waiting in the wings with a claim against Defendants. And it is equally irrelevant that Ms. Aguilar still has an ongoing dispute with Defendants and intends to join the putative class. Defendants ask the Court to turn a blind eye to the facts of the case and focus strictly on the temporary void on the plaintiff's side of the "v." But the Ninth Circuit has instructed the Court to apply the case and controversy requirement "flexibly, particularly where the issues remain alive, even if 'the plaintiff's personal stake in the outcome has become moot.'" Pitts, 653 F.3d at 1087.

With this flexible standard in mind, it is clear that the issues in this case remain alive. Ms. Aguilar has not settled her dispute with Defendants, she merely seeks to join the putative class and not serve as its representative due to health issues. There is still a very real case or controversy sufficient to support federal jurisdiction for the brief interim between Ms. Aguilar's withdrawal and Ms. Mitchell's substitution.

Moreover, even if there was a jurisdictional void in this case, it was not long lived. Ms. Aguilar expressed her intent to withdraw on January 15, 2014. (Syverson Decl. ¶ 3). On January 21, 2014, Plaintiff's counsel informed Defense counsel of Ms. Aguilar's intent to withdraw. (Syverson Decl. ¶ 4). On February 3, 2014, Ms. Mitchell retained Plaintiff's counsel. (Syverson Decl. ¶ 7). On February 6, 2014, Plaintiff filed notice of the motion to substitute Ms. Mitchell in place of Ms. Aguilar. (Doc. 62). Simply put, jurisdiction is not quite as mechanistic as Defendant contends. The case or controversy requirement was not fatally triggered the moment Ms. Aguilar resolved to withdraw as the class representative. Rather, Plaintiffs have a short amount of time to substitute the plaintiff and save their case. See Pitts, 653 F.3d at 1087 ("mootness . . . [is applied] flexibly, particularly where the issues remain alive," (internal quotation marks and citations omitted)); Phillips, 435 F.3d at 787 ("[A]though substitution of new named plaintiffs is sought in [this case], the named plaintiffs' claims, though in jeopardy, haven't been dismissed; the case is very much alive."); Wiener v. Dannon Co., Inc., 255 F.R.D. 658, 673 (C.D. Cal. 2009) (granting plaintiff leave to substitute proposed class representative after denying motion to certify the class for lack of typicality); Stickrath v. Globalstar, Inc., 2008 WL 5384760, at *7 (N.D. Cal. 2008) (where "class representative was removed from the case due to mootness, . . . substitution or intervention may be possible." (internal quotation and citation omitted)). Moreover, permitting a substitution at this point in time preserves scarce judicial resources, allows resolution of the case on the merits, and does no real violence to the case or controversy requirement.

Defendants cite several cases in support of their argument that there is no case or controversy when all named plaintiffs in a proposed class action have settled, withdrawn, or been dismissed prior to class certification. But each of these cases can be distinguished from the instant matter. See Smith v. T-Mobile USA,

Inc., 570 F.3d 1119, 1120-23 (9th Cir. 2009) (case mooted after court denied motion for class certification and named plaintiffs accepted settlement); Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors, 498 F.3d 920, 922-24 (9th Cir. 2007) (case mooted after defendant prevailed on motion to dismiss and named plaintiff declined to amend complaint and requested dismissal); Skilstaf, Inc. v. CVS Caremark Corp., 2010 WL 199717, at * (N.D. Cal. Jan 13, 2010) (case mooted when plaintiff had agreed to a prior settlement barring subsequent suits).

Unlike the instant case, the named plaintiffs in each of the above cases had reached a settlement with the defendants or requested dismissal of their own claims. The case or controversy in these cases ended when the plaintiffs resolved their claim. In the case at bar, Ms. Aguilar's claim has not been settled or dismissed. It is very much alive. Indeed, her withdrawal will be effective on the substitution of Ms. Mitchell.

Defendants also heavily rely on Hitt v. Arizona Beverage Co., 2009 WL 4261192 (S.D. Cal. Nov 24, 2009). In Hitt, the named plaintiff sought to withdraw prior to certification for unspecified personal reasons and filed a motion to substitute the plaintiff and requested sixty days to find a suitable replacement. Id. at *2. The Court denied the motion, reasoning that, in the absence of a plaintiff who wished to prosecute the case or a certified class, there was no remaining case or controversy to adjudicate. Id. at *5

The Court notes that Hitt is an unreported district court decision and is not binding precedent. To the extent Hitt can be read to suggest that withdrawal of a sole named plaintiff and proposed class representative prior to class certification must always result in mooting the case, this Court respectfully disagrees. As previously discussed, the Ninth Circuit has admonished district courts to apply the doctrine of mootness flexibly, particularly in the class action context, and with an

eye to determining whether an actual conflict persists despite the formal termination of a named party. See Pitts, 653 F.3d at 1087.

Moreover, the facts of this case are distinct in two important ways. First, the named plaintiff in Hitt did not express any desire to become part of the putative class after substitution or otherwise maintain her claim against the defendants. Hitt, 2009 WL 4261192 at *2. In the instant matter, Ms. Aguilar has done exactly that. Second, plaintiff's counsel in Hitt had no substitute ready and waiting, but rather asked for two months to locate a suitable plaintiff. Id. In this case, Plaintiff's counsel had a proposed substitute from the moment it filed the motion. Both of these facts illustrate that an actual case or controversy remains intact regardless of Ms. Aguilar's desire to step down from the role of proposed class representative.

In summary, the Court concludes that the weight of authority allows for a sole named plaintiff and proposed class representative to be substituted prior to class certification when the current plaintiff has not settled her claims or had her claims dismissed and intends to become part of the class, such that her claims persist and the case or controversy remains active, and when plaintiff's counsel is able to produce a proposed substitute immediately. On these unique facts, the named plaintiff's withdrawal and substitution does not moot the case and the court retains jurisdiction.

///
///
///
///
///
///
///
///

### 2. Good Cause

Plaintiff filed her second motion to amend after the deadline imposed by the Court's scheduling order. Therefore, she must show that good cause exists to justify a departure from the scheduling order. Fed. R. Civ. P 16(b)(4). Plaintiff argues that good cause exists because Ms. Aguilar's health issues and her son's health issues are outside her control, but substantially burden her ability to represent the interests of the class. Moreover, Plaintiff notes that if leave to substitute is denied, a new named plaintiff will need to file a new action, resulting in the duplication of the year and half of litigation already invested in this case and would further delay resolution of the merits, contrary to public policy and procedural rules favoring "the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

Defendant contends that no good cause exists to modify the scheduling order because the only basis is a purported illness reported second-hand by Plaintiff's counsel. Defendant reasons that Plaintiff's counsel's declaration regarding the existence of Plaintiff's "health issues" is so vague as to fail to establish good cause. Further, Defendant notes that Ms. Aguilar prosecuted this case for a year and a half before seeking to withdraw, and thus any duplication of effort resulting from a denial of this motion is Plaintiff's responsibility.

The fact that a year and a half passed between the initial filing of this case and Plaintiff's motion to substitute is significant, but not controlling. Defendant presents no evidence, nor even directly alleges, that Plaintiff's counsel's signed declaration is false. The Court takes Plaintiff's counsel at her word and accepts that Ms. Aguilar and her son are suffering from health issues which preclude Ms. Aguilar from serving as a class representative. Moreover, the Court notes that Plaintiff's counsel was diligent in bringing this motion. Ms. Aguilar contacted her attorney on January 15, 2014, to inform counsel of her health issues. On January

21, Plaintiff's counsel informed Defendant's counsel of the situation and their intent to file a motion to withdraw Ms. Aguilar as class representative. Twenty-two days after first learning that Ms. Aguilar wanted to withdraw, Plaintiff filed the instant motion on February 6, 2014. Plaintiff cannot be faulted for developing emergent health issues after the deadline imposed by the Court, and Plaintiff's counsel's response to that development was prompt. The Court finds that Plaintiff and her counsel were diligent in responding to an event outside their control. Further, the Court is mindful that failing to allow substitution at this point would merely require the filing of a new case and would waste the resources of both the parties and the judiciary. Accordingly, the Court finds that good cause exists to modify the scheduling order and permit Plaintiff's motion to move forward.

### **3. Futility, Undue Delay, and Bad Faith**

Defendant argues that even if this Court has jurisdiction and good cause exists to consider Plaintiff's motion, the motion is nonetheless barred by Rule 15 because it would be futile and is made with undue delay and in bad faith. Defendant's arguments regarding futility repeat those raised in opposition to Plaintiff's initial motion seeking leave to file a Second Amended Complaint. For the reasons discussed previously, the Court rejects the argument that allowing substitution would be futile.

Defendant also argues that Plaintiff's motion to substitute has been made with undue delay and is sought in bad faith. Defendant emphasizes that Ms. Aguilar prosecuted this case for a year and a half and only sought to withdraw once her deposition was imminent. Defendant also notes that Ms. Aguilar's claimed health issues were raised with counsel merely three days after the initial motion for class certification was filed, in which she reaffirmed her commitment to the case.

The Court rejects the argument that Plaintiff's motion was brought with undue delay. As discussed previously, Plaintiff's counsel acted diligently and promptly by filing this motion less than a month after learning that Ms. Aguilar sought to withdraw as named Plaintiff due to health issues. The Court also rejects the argument that Plaintiff acted in bad faith. Defendant calls into question Ms. Aguilar's veracity and speculates that the timing of Ms. Aguilar's health issues suggests an intent to evade deposition. But Defendant has not advanced any evidence in support of its speculation. Moreover, even if Ms. Aguilar withdraws as named plaintiff, she may nonetheless be deposed unless the nature and severity of her health issues completely precludes such activity. Accordingly, the Court finds that Defendant has failed to carry its burden of showing that Plaintiff's motion is made in bad faith.

### III. Class Certification

Plaintiff has also requested leave to refile her motion for class certification with the new plaintiff's information incorporated therein within seven days of any order allowing the substitution. The Court anticipates that this case will soon be transferred to the calendar of the Honorable Cynthia Bashant. Accordingly, the Court DENIES leave to refile a motion for class certification at this time. Plaintiff may seek leave and a hearing date from Judge Bashant after this case is transferred.

### IV. Protective Order

Finally, Plaintiff has requested an order that Ms. Aguilar not be deposed during this action in light of her and her son's health issues. Plaintiff cites no authority in support of this request, provides no detail on the nature and extent of Ms. Aguilar's and her son's health issues, and Defendant opposes the motion. Accordingly, the request is DENIED without prejudice. If Defendant seeks to depose Ms. Aguilar in the future, Plaintiff may seek a protective order at that time.

## V. Conclusion

For the foregoing reasons, the Court GRANTS Plaintiff's motion seeking leave to amend by filing a Second Amended Complaint (Docs. 43 and 45), and also GRANTS Plaintiff's motion seeking leave to further amend the proposed Second Amended Complaint by substituting Ms. Mitchell as named plaintiff and class representative in place of Ms. Aguilar (Doc. 62). Further, the Court DENIES without prejudice Plaintiff's request for a protective order barring Ms. Aguilar from being deposed. Any motion for a protective order shall be raised before the Magistrate Judge. The Second Amended Complaint shall be filed within 14 days of the entry of this Order.

IT IS SO ORDERED.

Dated: September 2, 2014

BARRY TED MOSKOWITZ, Chief Judge
United States District Court