Neil R. O'Hanlon (Bar No. 67018)
HOGAN LOVELLS US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: 310.785.4660
Fax: 310.785.4601
E-mail: neil.ohanlon@hoganlovells.com

Steven P. Hollman (*Admitted Pro Hac Vice*)
Robert B. Wolinsky (*Admitted Pro Hac Vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004-1109
Tel: 202.637.5672

*Counsel for Defendants Boulder Brands, Inc.
and GFA Brands, Inc.*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH MITCHELL, On Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BOULDER BRANDS, INC., (formerly known as SMART BALANCE, INC.), and GFA BRANDS, INC.,<br><br>Defendants. | Case No.: 3:12-cv-01862-BAS-BGS<br><br>Hon. Cynthia A. Bashant<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>[Filed concurrently with Notice of Motion and Motion to Dismiss Second Amended Complaint]<br><br>**DATE: November 24, 2014**<br>**TIME: 10:30 a.m.**<br>**COURTROOM: 4B**<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................1

LEGAL STANDARDS ..............................................................................................3

ARGUMENT AND AUTHORITIES ........................................................................4

   I.   PLAINTIFF'S "CLINICALLY MEANINGFUL" THEORY FAILS TO STATE A CLAIM. ...................................................................................5

      A.  Plaintiff Does Not Identify Any Allegedly Misleading Statements That Are Actionable Under California Law. .........................................................5

      B.  Plaintiff's Claims Also Fail Because They Are Facially Implausible And Belied By The Articles Cited in the SAC...............................................8

   II.  PLAINTIFF'S CLAIMS FAIL FOR THE ADDITIONAL REASON THAT THEY LACK SPECIFICITY AS REQUIRED BY FEDERAL RULE OF CIVIL PROCEDURE 9(b). .........................................................10

CONCLUSION........................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Arroyo v. Pfizer, Inc.*,
   No. C-12-4030 EMC, 2013 WL 415607 (N.D. Cal. Jan. 31, 2013) ................... 4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................. 3, 4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................ 3

*Berry v. Webloyalty.com, Inc.*,
   No. 10-CV-1358-H (CAB), 2011 WL 1375665 (S.D. Cal. Apr. 11, 2011) ......... 3

*Cullen v. Netflix, Inc.*,
   880 F. Supp. 2d 1017 (N.D. Cal. 2012) .................................................. 6, 7

*Edwards v. Coachella Valley Water Distr.*,
   No. 12-cv-2976 BAS (RBB), 2014 WL 4639395
   (S.D. Cal. Sept. 15, 2014) ....................................................................... 8

*Ford v. Hotwire, Inc.*,
   No. 07-CV-1312, 2007 WL 6235779 (S.D. Cal. Nov. 18, 2007) ...................... 8

*Guards Polo Club Holdings, Ltd. v. Reid*,
   No. 11-1817 SC, 2011 WL 3473378 (N.D. Cal. Aug. 9, 2011) .................. 4, 10

*Hansen Beverage Co. v. Innovation Ventures, LLC*,
   No. 08-CV-1166-IEG (POR), 2009 WL 6597891 (S.D. Cal. Dec. 23, 2009) ..... 3

*Jack Russell Terrier Network of Northern Ca. v. Am. Kennel Club, Inc.*,
   407 F.3d 1027 (9th Cir. 2005) .................................................................. 3

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ................................................................ 10

*Keegan v. Am. Honda Motor Co., Inc.*,
   838 F. Supp. 2d 929 (C.D. Cal. 2012) ..................................................... 11

*Lam v. Gen. Mills, Inc.*,
   859 F. Supp. 2d 1097 (N.D. Cal. 2012) ..................................................... 5

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) ................................................................................ 8

*Moore v. Kayport Package Exp., Inc.*,
  885 F.2d 531 (9th Cir. 1989) ............................................................................. 11

*Moss v. U.S. Secret Service*,
  572 F.3d 962 (9th Cir. 2009) ............................................................................... 3

*Oestreicher v. Alienware Corp.*,
  544 F. Supp. 2d 964 (N.D. Cal. 2008) ................................................................. 7

*Rooney v. Cumberland Packing Corp.*,
  No. 12-CV-0033-H, 2012 WL 1512106 (S.D. Cal. Apr. 16, 2012) ..................... 5

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ............................................................................... 4

*Videtto v. Kellogg USA*,
  No. 2:08-cv-01324-MCE-DAD, 2009 WL 1439086 (E.D. Cal. May 21, 2009) ................................................................................................................. 5

*Vitt v. Apple Computer, Inc.*,
  469 F. App'x 605 (9th Cir. 2012) .................................................................... 5, 6

**OTHER AUTHORITIES**

Fed. R. Civ. P. Rule 9(b) ........................................................................... 1, 2, 3, 10

Defendants Boulder Brands, Inc. and GFA Brands, Inc. (together, "Defendants") respectfully move to dismiss the Second Amended Complaint asserted by new Plaintiff Elizabeth Mitchell on the grounds that it is based on an advertising/labeling claim that Defendants do not make; that the language Plaintiff seeks to import into defendants' advertising/labeling is too vague and ambiguous to have any discernible meaning to consumers; that the allegations supporting this new claim are facially implausible; and that Plaintiff fails to meet the applicable heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This case originally was filed on July 27, 2012, by a different plaintiff, Maria Aguilar, who filed a First Amended Complaint ("FAC") on August 28, 2012. (D.E. 8.) In late 2013, Aguilar filed a motion for leave to file a Second Amended Complaint ("SAC") (D.E. 43, 45), and shortly thereafter, on the eve of her deposition, Aguilar sought to remove herself from the case by substituting in the current Plaintiff, Elizabeth Mitchell (D.E. 62). Aguilar's motions to amend and substitute were granted on September 2, 2014. (D.E. 74.)

Over the last two plus years that this case has been pursued by Plaintiff's counsel, the cause of action has lurched from one theory of liability to another in search for one that is tenable. Aguilar's original Complaint and First Amended Complaint claimed that the packaging for Smart Balance® spreadable butter products (the "Spreadable Butter(s)") is deceptive because the products do "not have sufficient levels of plant sterols to block the absorption and thus reduce cholesterol in the body." (FAC ¶ 2.) In briefing on the motion to dismiss the FAC, Plaintiff distanced herself from the theory that packaging of the Spreadable Butters conveyed the message that it reduced cholesterol in the body. (*See* D.E. 13 at 12.) On June 10, 2013, Judge Moskowitz allowed the FAC to move forward solely on the theory that the packaging conveyed the false and misleading message that the

Spreadable Butters blocked the cholesterol in the butter. (D.E. 28 at 7.) The parties engaged in discovery and expert work based on that theory, and then Aguilar filed a motion for leave to file a second amended complaint on November 8, 2013, changing her theory of the case once again by introducing the claim that the packaging of the Spreadable Butters conveys the false and misleading message that the Spreadable Butters block a "clinically meaningful" amount of the cholesterol in the butter. (D.E. 43, 45.)

The reason for this new direction was simple: it is a matter of scientific fact that the plant sterols in the Spreadable Butters *do* help block cholesterol absorption, as demonstrated by the articles relied upon by Plaintiff herself in the Complaint, and as effectively conceded by Plaintiff through her amendment. But Plaintiff's backpedaling has left her with no viable claim, and therefore, this case should be dismissed. First, it is undisputed that the packaging of the Spreadable Butters does not actually make the "clinically meaningful" claim that now forms the basis of Plaintiff's SAC. Second, the term "clinically meaningful" is so vague and ambiguous that it is meaningless and therefore cannot form the basis for a viable claim under the Unfair Competition Law, Business and Professions Code § 17200, *et seq.* (the "UCL") or the Consumers Legal Remedies Act, Civil Code § 1750, *et seq.* (the "CLRA"). Indeed, the SAC does not even allege what Plaintiff understands a "clinically meaningful" level of cholesterol blocking to be. Third, even if a claim could be actionable based on the term "clinically meaningful" – which it cannot – Plaintiff's SAC still should be dismissed because the articles she relies on in the Complaint belie her assertions, and her allegations are facially implausible. Finally, Plaintiff's SAC fails to meet the applicable heightened pleading standards of Rule 9(b). For all these reasons, the Court should dismiss the SAC.

## LEGAL STANDARDS

It is well-settled law that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of [her] 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Berry v. Webloyalty.com, Inc.*, No. 10-CV-1358-H (CAB), 2011 WL 1375665, at *1 (S.D. Cal. Apr. 11, 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Indeed, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). "'A claim has facial plausibility . . . when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678)).

Moreover, a court may not assume any facts necessary to a plaintiff's claim that she has not alleged. *See Jack Russell Terrier Network of Northern Ca. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1035 (9th Cir. 2005) ("Although we assume the truth of the facts alleged in the complaint, we cannot assume any facts necessary to the Appellants' claim that they have not alleged."); *Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08-CV-1166-IEG (POR), 2009 WL 6597891, at *2 (S.D. Cal. Dec. 23, 2009) ("In spite of the deference the court is bound to pay to the plaintiff's allegations, it is not proper for the court to assume that the plaintiff can prove facts that . . . have not been alleged.") (quotation omitted). Simply put, a complaint shall not suffice when it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Berry*, 2011 WL 1375665 at *1 (quoting *Twombly,* 550 U.S. at 557).

Additionally, if factual allegations are not sufficient "to raise a right to relief above the speculative level," the claims should be dismissed. *Twombly*, 550 U.S. at

1  555. Any claim sounding in fraud also must satisfy the heightened pleading
2  requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which requires
3  the plaintiff to provide the "who, what, when, where, and how" of the alleged fraud.
4  *Arroyo v. Pfizer, Inc.*, No. C-12-4030 EMC, 2013 WL 415607, at *6-7 (N.D. Cal.
5  Jan. 31, 2013) (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997)). None of
6  the claims asserted in Plaintiff's SAC meet these pleading standards.

7  Moreover, "the tenet that a court must accept as true all of the allegations
8  contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of
9  the elements of a cause of action, supported by mere conclusory statements, do not
10 suffice." *Iqbal*, 556 U.S. at 678; *see also Sprewell v. Golden State Warriors*, 266
11 F.3d 979, 988 (9th Cir. 2001) (noting that the court is not required to accept as
12 true "allegations that are merely conclusory, unwarranted deductions of fact, or
13 unreasonable inferences."). Finally, like legal conclusions, "the [c]ourt does not
14 accept as true allegations that contradict exhibits attached to the Complaint . . ."
15 *Guards Polo Club Holdings, Ltd. v. Reid*, No. 11-1817 SC, 2011 WL 3473378, at
16 *8, n.1 (N.D. Cal. Aug. 9, 2011) (citing *Manzarek v. St. Paul Fire & Marine Ins.
17 Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)).

## **ARGUMENT AND AUTHORITIES**

19 Plaintiff's claims should be dismissed because her Second Amended
20 Complaint fails to meet the pleading requirements of Rules 8 and 9(b) of the Federal
21 Rules of Civil Procedure. The SAC is based on a vague and unsupported theory that
22 is not actionable under California law, and Plaintiff has failed to plead sufficient
23 facts to establish that there are any false or misleading representations made on the
24 labels of the Spreadable Butters. To the contrary, the putative facts upon which
25 Plaintiff purports to rely demonstrate the implausibility of her claims. Accordingly,
26 the Court should dismiss Plaintiff's Second Amended Complaint.

27
28

## I. PLAINTIFF'S "CLINICALLY MEANINGFUL" THEORY FAILS TO STATE A CLAIM.

The Ninth Circuit has held that, under the UCL and CLRA, "to be actionable as an affirmative misrepresentation, a statement must make a 'specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact.'" *Vitt v. Apple Computer, Inc.*, 469 F. App'x 605, 607 (9th Cir. 2012) (quoting *Coastal Abstract Serv. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999)). Here, Plaintiff's claim that "the 100mg of plant sterols contained in the Smart Balance Spreadable Butter is not an amount sufficient to provide consumers with a clinically meaningful cholesterol blocking effect" (SAC ¶ 23), fails to meet this requirement.

### A. Plaintiff Does Not Identify Any Allegedly Misleading Statements That Are Actionable Under California Law.

First, it is undisputed that the term "clinically meaningful" does not appear anywhere on the Spreadable Butter packaging. Thus, Plaintiff's claim is not based on statements actually made by Defendants, but rather on her baseless misinterpretation of otherwise clear statements on the product labels. Her SAC should therefore be dismissed. *See Videtto v. Kellogg USA*, No. 2:08-cv-01324-MCE-DAD, 2009 WL 1439086, at *3 (E.D. Cal. May 21, 2009) (granting motion to dismiss UCL and CLRA claims because the packaging for Froot Loops cereal "makes no claim that the Product is particularly nutritious or designed specifically to meet the nutritional needs of toddlers or children," the message plaintiffs alleged was conveyed); *see also Rooney v. Cumberland Packing Corp.*, No. 12-CV-0033-H, 2012 WL 1512106, at *4 (S.D. Cal. Apr. 16, 2012) (granting motion to dismiss UCL claim that "Sugar in the Raw" product deceptively conveyed message that the sugar was unprocessed, noting that "[n]owhere on the box do the words 'unprocessed' or 'unrefined' appear"); *Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1103-04 (N.D. Cal. 2012) (granting motion to dismiss UCL and CLRA claims based on claim that

- 5 -

1  the statement "gluten free" on packaging was deceptive because it was "objectively
2  true and communicates nothing more than the absence of gluten in the product").

3  Second, Plaintiff's phrase "clinically meaningful cholesterol blocking effect"
4  is so vague and ambiguous as to be substantively meaningless. Indeed, the SAC
5  does not attempt to define the term with respect to the relevant consuming public,
6  nor does it even allege what *Plaintiff* understood "clinically meaningful" to mean.
7  Plaintiff does not allege, for instance, that the 100mg of plant sterols found in one
8  serving of the Spreadable Butters must block a certain percentage of dietary
9  cholesterol in order for her to believe that it meets this amorphous standard. In
10 short, Plaintiff's claim is precisely the type that is not actionable because it is
11 incapable "of being proved false or of being reasonably interpreted as a statement of
12 objective fact," whether by the named plaintiff or the putative class. *Vitt*, 469 F.
13 App'x at 607.

14 The Northern District of California recently dismissed a strikingly similar
15 claim on the grounds that it was not actionable under California law. In *Cullen v.
16 Netflix, Inc.*, 880 F. Supp. 2d 1017, 1026 (N.D. Cal. 2012), deaf customers of video
17 provider Netflix sued the company alleging that various statements made by Netflix
18 about its intention to caption a lot of its viewing content, when read in combination,
19 had the effect of conveying to Netflix's deaf and hard of hearing members that
20 Netflix would "meaningfully" subtitle its streaming library within a "reasonable"
21 period of time. Just as in this case, the statements did not specifically promise to
22 provide the services in a "meaningful" way, yet the plaintiffs alleged that customers
23 would be misled into believing this. *Id.* The court dismissed the plaintiffs' claims
24 brought under the UCL, CLRA, and California's False Advertising Law ("FAL"),
25 concluding that "[a] representation that the captioned content is at [a] meaningful
26 level is a vague and subjective claim and therefore is not actionable under the UCL,
27 FAL, or CLRA." *Id.*
28

1  Here, just as in *Cullen*, Plaintiff's claim that the Spreadable Butter labels conveyed to customers that the plant sterols would help block cholesterol in a "clinically meaningful amount" is far too vague and subjective to be actionable under California law. *See also Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) ("Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable."), *aff'd*, 322 F. App'x 489 (9th Cir. 2009); *id.* ("Vague or highly subjective claims about product superiority amount to non-actionable puffery . . .'") (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997)).

Even if Plaintiff had alleged what she subjectively believed was a "clinically meaningful cholesterol blocking effect," her definition would not represent what is "clinically meaningful" to each individual member of the entire proposed class. What one consumer may see as "clinically meaningful" may be entirely different than what another consumer would define as "clinically meaningful." Indeed, one consumer may feel that 99% of the cholesterol found in a serving of the Spreadable Butters would need to be blocked in order for the plant sterols to have a meaningful effect, while others would be content with 50%, 20%, or even 1%. In addition, many proposed class members likely would have no idea what "clinically meaningful cholesterol blocking effect" means in this context, or if it has any discernible meaning at all. It is for just this reason that a cause of action cannot be based on such a vague and amorphous theory: what is "meaningful" is in the eye of the beholder.

Defendants recognize that Judge Moskowitz permitted Plaintiff to file the SAC over Defendants' objections that amendment would be futile. (D.E. 74.) However, there are at least two reasons that decision does not preclude dismissal now. First, Judge Moskowitz's decision relied on an expert report that is not attached to or referenced in the SAC (*id.* at 5) and therefore may not be considered

on a motion to dismiss. *See Edwards v. Coachella Valley Water Distr.*, No. 12-cv-2976 BAS (RBB), 2014 WL 4639395, at *1 (S.D. Cal. Sept. 15, 2014) (Bashant, J.) ("Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss.") (citing *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990)). Second, rather than addressing what consumers might think, that report purported to address what scientific or medical experts would consider to be clinically meaningful. (D.E. 74 at 6, quoting expert report: ". . . *I* do not consider it nor would *other experts in the field* consider to be clinically meaningful." (emphasis added).) Leaving aside the questionable value of the report on that point, it simply is not relevant here. The relevant audience in Plaintiff's claims is *consumers* of the Spreadable Butters, not scientists or medical professionals. (*E.g.,* SAC ¶¶ 8, 21.) Therefore, even if the expert report could be considered – which it cannot – it provides no useful information to solve Plaintiff's pleading deficiency.

### B. Plaintiff's Claims Also Fail Because They Are Facially Implausible And Belied By The Articles Cited in the SAC.

Not only are Plaintiff's claims so vague as to be non-actionable, they also should be dismissed because at least one of the studies she cites in the Complaint belies her assertions, making her allegations facially implausible.

As an initial matter, of the three articles Plaintiff relies upon in the Complaint, two of them have *nothing at all* to do with the SAC's allegations regarding *blocking* cholesterol absorption. (SAC ¶ 22 and n.4)[1] The Law and Hendriks articles instead

---

[1] Paragraph 22 of the SAC relies upon Law, M., *Plant sterol and stanol margarines and health*, 320(7238) BMJ 861-864 (2000) (hereinafter, "Law") and Hendriks, H.F., et al., *Spreads enriched with three different levels of vegetable oil sterols and the degree of cholesterol lowering in normocholesterolaemic and mildly hypercholesterolaemic subjects*, 53(4) Eur. J. Clin. Nutr. 319-27 (1999) (hereinafter, "Hendriks"). Those articles are attached hereto as Exhibits A and B, respectively. Plaintiff has incorporated these articles by reference to them in the SAC, and it is well-settled that courts can rely on documents referenced in the complaint when ruling on a motion to dismiss. *See, e.g., Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *see also Ford v. Hotwire, Inc.*, No. 07-CV-1312, 2007 WL 6235779, at *1 (S.D. Cal. Nov. 18, 2007).

1  relate to *reducing* overall cholesterol levels in serum and thus pertain to a theory of
2  the old FAC claims that Plaintiff previously ran away from and the Court expressly
3  discounted (*see* D.E. 13 at 12; D.E. 28 at 7). The incongruity of the allegations to
4  the citations is plain on the face of the SAC: despite making allegations about what
5  is required to "meaningfully *block* cholesterol from being absorbed into the body",
6  the citations in support refer only to *lowering and reducing* cholesterol. (*See, e.g.,*
7  SAC ¶ 22, copied in relevant part below (emphases added).)

> **Scientific Studies Confirm that 100mg of Plant Sterols**
> **Do Not Provide Meaningful Cholesterol Blocking Benefits**
>
> 22. Plant sterols in certain quantities do have the ability to help block absorption of cholesterol by the body, which, in turn, can lower a person's LDL cholesterol and help reduce the risk of coronary heart disease. For example, several well conducted scientific studies on plant sterols have found that consumption of a minimum of 0.8 grams of plant sterols daily, and preferably 2 grams (almost the entire container of Smart Balance Spreadable Butter), is required to meaningfully block cholesterol from being absorbed into the body.[4]
>
> ---
> [4] Representative clinical studies confirming 0.8 grams to 2.0 grams of plant sterols are necessary to yield cholesterol reducing benefits include: Law, M., *Plant sterol and stanol margarines and health*, 320(7238) BMJ 861-864 (2000) (meta-analysis of 18 controlled clinical trials found that consumption of spreads providing an average of 2 g/day of plant sterols lowered cholesterol); Hendriks, H.F., et al., *Spreads enriched with three different levels of vegetable oil sterols and the degree of cholesterol lowering in normocholesterolaemic and mildly hypercholesterolaemic subjects*, 53(4) Eur. J. Clin. Nutr. 319-27 (1999) (recommending 1.6 g of plant sterols/day).
>
> SECOND AMENDED CLASS ACTION COMPLAINT
> 8

**Allegations relate to cholesterol blocking**

**Studies and cited only relate to cholesterol lowering/ reduction, which is not at issue**

22  The third article Plaintiff relies upon – Racette, S., et al., *Dose effects of*
23  *dietary phytosterols on cholesterol metabolism: a controlled feeding study*, Am. J.
24  Clin. Nutr., 91:32-8 (2010) (hereinafter, "Racette") (attached hereto as Exhibit C) –
25  actually supports the cholesterol blocking effect of plant sterols in the butter.
26  Plaintiff relies on Racette for numbers and propositions that are nowhere to be
27  found anywhere in that article – hardly making it a proper or plausible basis for the
28  claims in Plaintiff's SAC. Plaintiff then compounds her errors by applying

incorrect math to allege that Racette shows that 100 mg of plant sterols can block only a "*de minimis*" amount of "either 0.18mg or 0.27mg" of cholesterol. (SAC ¶ 25-26.) To the contrary, Racette plainly demonstrates that an increased plant sterol intake of 100 mg would result in reduced intestinal cholesterol absorption of about 2.5% of an individual's total daily cholesterol intake and would increase the amount of cholesterol excreted from the body by nearly 10%. (*See* Ex. C at 32.) Properly applying the conclusions actually reached in the Racette study makes clear that the actual cholesterol blocking ability of 100 mg of plant sterols is sufficient to negate most or all of the cholesterol in the butter. *See Guards Polo Club*, 2011 WL 3473378, at *8, n.1 ("the [c]ourt does not accept as true allegations that contradict exhibits attached to the Complaint . . .").

Thus, putting aside Plaintiff's attempt to conflate the issues of cholesterol blocking and cholesterol reducing, and ignoring her mischaracterizations and errors, the scientific studies that she cites are clear: 100 mg of plant sterols can help block the absorption of dietary cholesterol. Plaintiff's unfounded and implausible claims to the contrary should be dismissed.

## II. PLAINTIFF'S CLAIMS FAIL FOR THE ADDITIONAL REASON THAT THEY LACK SPECIFICITY AS REQUIRED BY FEDERAL RULE OF CIVIL PROCEDURE 9(b).

All of the claims in Plaintiff's SAC sound in fraud and therefore they are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.[2] *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL. . . . [Where] the claim is . . . 'grounded in fraud' or . . . 'sound[s] in fraud,' . . . the pleading as a whole must

---

[2] The Court already has determined that Plaintiff's UCL and CLRA "claims 'sound in fraud,' and the heightened pleading requirements of Rule 9(b) apply." (D.E. 28 at 6 (citation omitted).) The Court has not considered the sufficiency of the allegations in the Second Amended Complaint based on this heightened pleading standard, however.

satisfy the particularity requirement of Rule 9(b)."). Rule 9(b) requires that the facts constituting the fraud be pled with specificity; conclusory allegations are insufficient. *See Keegan v. Am. Honda Motor Co., Inc.*, 838 F. Supp. 2d 929, 937 (C.D. Cal. 2012). Thus, a plaintiff must allege "the time, place and nature of the alleged fraudulent activities" in order to survive a motion to dismiss. *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

Here, the Second Amended Complaint fails to meet the heightened standard for pleading fraud with specificity. Plaintiff Mitchell's allegations regarding her own purchases are all contained in Paragraph 12 of the SAC. In that paragraph, she fails to allege specifically when she purchased the Smart Balance Light Butter & Canola Oil Blend product or how many times she made such purchases. (SAC ¶ 12.) Moreover, Plaintiff provides nothing more than conclusory allegations that the labeling of the Spreadable Butters is deceptive or fraudulent. (*E.g., id.* ¶¶ 58, 70.) She alleges that she believed "the Smart Balance Spreadable Butters would block a meaningful amount of cholesterol in the butter in reliance on the cholesterol blocking benefit representations," (*id.* ¶ 12), but she does not allege what she considers to be meaningful or what about the packaging of the Spreadable Butters led her to that conclusion, given that the term "meaningful amount" does not appear anywhere on the packaging. As a result, the Court should dismiss the SAC in its entirety.

## **CONCLUSION**

For all of the foregoing reasons, the Court should grant Defendants' Motion and dismiss Plaintiff's Second Amended Complaint with prejudice.

DATED: October 14, 2014
/s/ *Steven P. Hollman*
Neil R. O'Hanlon (Bar No. 67018)
HOGAN LOVELLS US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: 310.785.4660

| | |
|---|---|
| 1 | Fax: 310.785.4601 |
| 2 | E-mail: neil.ohanlon@hoganlovells.com |
| 3 | Steven P. Hollman (*Admitted Pro Hac Vice*) |
| | Robert B. Wolinsky (*Admitted Pro Hac Vice*) |
| 4 | HOGAN LOVELLS US LLP |
| | 555 Thirteenth Street, N.W. |
| 5 | Washington, D.C. 20004-1109 |
| | Tel: 202.637.5672 |
| 6 | Fax: 202.637.5910 |
| 7 | E-mail: steven.hollman@hoganlovells.com |
| | E-mail: robert.wolinsky@hoganlovells.com |
| 8 | |
| 9 | *Counsel for Defendants Boulder Brands, Inc. and GFA Brands, Inc.* |